# United States Court of Federal Claims

| | |
|---|---|
| FISHER SAND & GRAVEL CO., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Case No. __26-112 C__ |

## COMPLAINT

Plaintiff Fisher Sand & Gravel Co. ("Fisher") brings this Complaint for damages against Defendant, the United States of America, acting by and through its Department of Homeland Security ("DHS"), U.S. Customs and Border Protection ("CBP"), and avers as follows:

### NATURE OF THE ACTION

1. This action arises from a contract claim submitted by Fisher under the Contract Disputes Act, 41 U.S.C. § 7101 *et seq.*, on September 11, 2025, and on which the CBP contracting officer issued a Contracting Officer's Final Decision ("COFD") on December 7, 2025.

2. Fisher's certified claim sought payment for work Fisher performed, and Defendant accepted, under a contract for design and construction of infrastructure at the U.S. border with Mexico.

3. Fisher holds an indefinite delivery, indefinite quantity ("IDIQ") contract, Contract No. HSBP1017D00019, under which CBP can place orders. On August 30, 2022, CBP issued a delivery order to Fisher under the IDIQ contract, Order No. 70B01C22F00000952, for the design and completion of the infrastructure construction at the portion of the U.S.-Mexico border designated as El Paso Sections 1, 2, and 3, sub-sectors 1, 11-1 and 6-6. For purposes of this

Complaint, Fisher refers to Order No. 70B01C22F00000952 as the "Contract."

4. Fisher completed its performance under the Contract, and the CBP accepted Fisher's work. Nevertheless, Defendant has unlawfully refused to pay Fisher monies owed under the Contract for the work performed by Fisher. This action seeks damages from Defendant for its non-payment of amounts due under the Contract, including prejudgment interest under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109, and the Prompt Payment Act, 31 U.S.C. §§ 3901-3907.

## PARTIES

5. Fisher is a North Dakota corporation, with its principal place of business at 3020 Energy Drive, Dickinson, North Dakota 58601.

6. Defendant is the United States of America, acting by and through the U.S. Department of Homeland Security, Customs and Border Protection, and its officers, employees, and agents.

## JURISDICTION

7. This is an action to recover damages from the United States due to breach of contract by Defendant.

8. This Court has subject matter jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Contract Disputes Act, 41 U.S.C. § 7104(b)(1).

9. On September 11, 2025, Fisher submitted a duly certified claim to the CBP contracting officer, asserting entitlement to the sum of $6,336,592.22 as the remaining amount due Fisher under the Contract for work performed by Fisher and accepted by the CBP. Fisher requested a final decision of the contracting officer on Fisher's certified claim.

10. The CBP contracting officer issued a COFD denying Fisher's certified claim via email dated December 7, 2025.

11. This Complaint is timely filed within 12 months of December 7, 2025, the date on which Fisher received the COFD on its certified claim. 41 U.S.C. § 7104(b)(3).

## FACTS

12. On August 30, 2022, CBP awarded Fisher the Contract to design and complete the infrastructure construction at the portion of the U.S.-Mexico border designated as El Paso Sections 1, 2 and 3, sub-sectors 1, 11-1 and 6-6. The work required under the Contract did not involve new border wall construction but instead involved the design and completion of ancillary items, such as road construction, work on the ground detection system, and erosion control measures.

13. As originally awarded, the Contract provided for a firm fixed price of $94,000,000 for performance of the Contract. A series of post-award modifications to the Contract ultimately increased the total Contract price to a firm fixed price of $116,379,078.00.

14. The Contract incorporates Federal Acquisition Regulation ("FAR") clause 52.232-27, Prompt Payment for Construction Contracts.

15. On March 12, 2024, CBP provided Fisher a copy of the Final Government Inspection Acceptance Checklist Form with Punchlist Results, which documented CBP's acknowledgment that Fisher had completed all work required under the Contract, including all punchlist items.

16. Given the CBP's final acceptance of the contract work as reflected in the Final Government Inspection Acceptance Checklist Form with Punchlist Results, Fisher was authorized under the Contract to submit an invoice in the amount of $6,336,592.22 for the outstanding balance of the Contract price still owed by CBP to Fisher for the completion of the Contract.

17. On March 15, 2024, however, the CBP contracting officer ordered Fisher to suspend all work under the Contract, *including invoicing*, in an email invoking FAR clause 52.242-

14, Suspension of Work (the "Suspension of Work Order"). The Suspension of Work Order directed Fisher to suspend all work associated with the Contract, based on a March 8, 2024, preliminary injunction issued by the U.S. District Court for the Southern District of Texas in *The General Land Office of the State of Texas, et al. v. Joseph R. Biden, et al.*, 7:21-CV-00272. The Suspension of Work Order explicitly stated that the suspension of work "includes, but is not limited to, procurement, *invoicing*, design, administrative actions, construction, or any other work in furtherance of the contract." (emphasis added).

18. The CBP's March 15, 2024, Suspension of Work Order indefinitely prohibited Fisher from submitting the final invoice under the Contract that Fisher was otherwise prepared, and authorized under the Contract, to submit. CBP's direction that invoices were not to be submitted and would not be processed during the suspension of work prevented Fisher from submitting its final invoice to CBP for payment under the Contract, notwithstanding that, as of March 15, 2024, Fisher had already completed, and CBP had already accepted, all the work required under the Contract.

19. On March 16, 2024, Fisher submitted to CBP via email a payment request for the remaining payment owed under the Contract, in the form of a Field Quantity Concurrence spreadsheet. The Field Quantity Concurrence spreadsheet itemized the field quantities of work performed by Fisher for the "Current Period" covered by the payment request and the Contract price remaining due to Fisher for that quantity of work. Fisher's email transmitting the spreadsheet indicated that Fisher was "billing to full contract value." A copy of the transmittal email is attached hereto as **Exhibit 1**.[1] The spreadsheet included a signature block for CBP to confirm its

---

[1] Fisher is excluding or redacting from the Exhibits to this Complaint (i) attachments that contain proprietary commercial and financial information and (ii) information the Government may

concurrence with the field quantities claimed by Fisher.

20. The Field Quantity Concurrence spreadsheet therefore constituted a request for a progress payment within the meaning of FAR 52.232-27(a)(1)(i), as it constituted a request for contracting officer approval of the amount and value of work and services performed under a construction contract.

21. On March 22, 2024, CBP responded by email to the Field Quantity Concurrence Fisher had submitted. The CBP's email response stated, "Invoices cannot be processed for payment at this time as a result of the March 8, 2024 preliminary injunction issued by the United States District Court for the Southern District of Texas in *The General Land Office of the State of Texas, et al. v. Joseph R. Biden, et al.*, 7:21-CV-00272."

22. CBP's response, stating that "[i]nvoices cannot be processed for payment at this time," demonstrates that CBP contemporaneously understood and interpreted the Field Quantity Concurrence spreadsheet as having constituted a progress payment request within the meaning of FAR 52.232-27(a)(1)(i) governing the Government's obligation to make prompt payment under construction contracts. CBP's response to the progress payment request did not identify any disagreement by CBP over the quantity or quality of the work covered by the payment request, or regarding Fisher's compliance with contract requirements for the work covered by the payment request. Instead, CBP merely advised Fisher that its payment request would not be processed due to the injunction issued by the U.S. District Court in the *General Land Office v. Biden* litigation.

23. Fisher prepared a final invoice, Invoice No. PC1-17 dated April 24, 2024 (the "Final Invoice"), documenting the contract balance of $6,336,596.22 owed by CBP under the

---

consider sensitive. The redacted information and withheld attachments are already in the Government's possession.

Contract. While the Final Invoice was prepared on or before April 24, 2024, CBP's directive in the Suspension of Work Order forbidding Fisher from invoicing under the Contract prevented Fisher from submitting Invoice No. PC1-17 for payment through the invoicing procedures otherwise authorized under the Contract.

24. On September 17, 2024, Fisher received from the CBP contracting officer a notice purporting to terminate the Contract for convenience under FAR 52.249-2, Alternate I, Termination for Convenience of the Government (the "Termination Notice"). In the Termination Notice, CBP asserted that it was terminating the Contract for the convenience of the Government to comply with the order of the U.S. District Court for the Southern District of Texas in the same *General Land Office v. Biden* case referenced in the Suspension of Work Order, which the District Court had subsequently converted into a permanent injunction.

25. As of the September 17, 2024, Termination Notice, Fisher had already fully performed the Contract and was only awaiting final payment by CBP of the unpaid balance of the Contract price. Accordingly, there was no remaining performance by Fisher under the Contract capable of being "terminated for the convenience of the Government" on September 17, 2024.

26. On September 11, 2025, Fisher submitted a certified claim (the "Claim") to the CBP contracting officer asserting entitlement as a matter of right to payment of the as-yet-unpaid balance owed Fisher under the Contract of $6,336,592.22. **Exhibit 2**. Fisher attached as an Exhibit to the Claim a copy of the Final Invoice Fisher had prepared on or before April 24, 2024, to establish the amount still owed by CBP to Fisher under the Contract.

27. The CBP contracting officer issued a final decision on Fisher's Claim via email on December 7, 2025. A copy of the COFD email is attached as **Exhibit 3**. In his COFD email denying Fisher's Claim, the contracting officer stated: "CBP is in receipt of your letter dated

[September 11, 2025], seeking payment of [Fishers Sand and Gravel] outstanding invoice for work performed prior to the suspension notification issued on [March 15, 2024]. You have submitted your claim under the Contract Disputes Act (CDA), 41 U.S.C. § 7101, et. seq., and have sought the Contracting Officer's final decision. In light of the court's injunction in *The General Land Office of the State of Texas, et al., v. Joseph R. Biden, et. al.*, 7:21-CV-00272 (S.D. TX, March 8, 2024) discussed in the Notice of Termination CBP sent you previously, CBP denies your claim. This response constitutes the Contracting Officer's final decision of your claim." **Exhibit 3** (bracketed text appears as in original).

28. CBP has never disputed the remaining amount owed Fisher under the Contract, nor has CBP revoked its acceptance of the work at issue in the Final Invoice and Fisher's Claim.

29. CBP has not denied that it has an obligation under the Contract to pay Fisher the amounts at issue in the Final Invoice and Fisher's Claim. Rather, CBP has merely asserted that it cannot pay Fisher the amounts owed, because the District Court injunction in the *General Land Office v. Biden* litigation, as interpreted by CBP, restricts CBP's use of certain fiscal year 2020 and fiscal year 2021 appropriations to make payments under the Contract.

## COUNT I – BREACH OF CONTRACT

30. Fisher incorporates by reference and realleges the contentions in all of the preceding paragraphs as though fully set forth in this Count.

31. The Contract between Fisher and CBP constitutes a valid and legally binding contract.

32. Prior to the Suspension of Work Order, Fisher performed work under the Contract priced under the Contract at $6,336,592.22. CBP inspected and accepted that work performed by Fisher, yet CBP has not paid Fisher for that work.

33. Fisher submitted a proper payment request to CBP on March 16, 2024, for the work performed by Fisher, and accepted by CBP, prior to the Suspension of Work Order. CBP did not express any disagreement over the quantity or quality of work for which Fisher sought payment in the March 16, 2024, payment request, nor did CBP allege that Fisher's performance of the work in any manner failed to comply with contract requirements. Accordingly, under the terms of FAR 52.232-27, Prompt Payment for Construction Contracts, the due date for CBP to pay Fisher for the work at issue in the March 16, 2024, payment request was fourteen days after CBP's receipt of that payment request—*i.e.*, March 30, 2024.

34. CBP has failed to pay Fisher the amount owed for work performed by Fisher and accepted by CBP under the Contract, as sought in the March 16, 2024, payment request and Fisher's Claim.

35. The injunction cited by CBP as the sole basis for refusing to pay Fisher the amount owed under the Contract does not extinguish Defendant's payment obligation under the Contract, even if CBP contends that the injunction prevents use of specified appropriations to satisfy those payment obligations. "An appropriation *per se* merely imposes limitations upon the Government's own agents; … but its insufficiency does not pay the Government's debts, nor cancel its obligations." *Ferris v. United States*, 27 Ct.Cl. 542, 546 (1892).

36. Congress appropriated sufficient funds to pay for the Contract at issue in this action, and Defendant "cannot back out of a promise to pay on grounds of 'insufficient appropriations,' even if the contract uses language such as 'subject to the availability of appropriations,' and even if an agency's total lump-sum appropriation is insufficient to pay *all* the contracts the agency has made." *Cherokee Nation of Okla. v. Leavitt*, 543 U.S. 631, 637 (2005).

37. CBP's failure to pay Fisher the amount owed for work performed by Fisher and

accepted by CBP under the Contract constitutes a breach of contract and a violation of the Prompt Payment Act and FAR 52.232-27's provisions requiring prompt payment of construction contractors.

38. As a direct and proximate result of CBP's breach of contract, Fisher has suffered damages in the amount of $6,336,592.22, plus prejudgment interest under applicable law, including the Prompt Payment Act and Contract Disputes Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Enter judgment against Defendant and in favor of Plaintiff in the amount of $6,336,592.22, plus applicable prejudgment interest under 31 U.S.C. § 3902, 48 C.F.R. § 52.232-27, and 41 U.S.C. § 7109;

B. Award Plaintiff its costs and attorneys' fees incurred in this action; and

C. Award Plaintiff such other relief as the Court deems appropriate.

Dated: January 21, 2026

Respectfully submitted,

*s/Frank S. Murray*

Of Counsel:
Erin L. Toomey
FOLEY & LARDNER LLP
500 Woodward Avenue, Suite 2700
Detroit, MI 48226

Frank S. Murray
FOLEY & LARDNER LLP
3000 K Street, N.W., Suite 600
Washington D.C. 20007-5143
Telephone 202.295.4163
Email: fmurray@foley.com
COUNSEL OF RECORD

*Attorneys for Fisher Sand & Gravel Co.*